Lane N. MELTZER, Plaintiff-Appellee
Cross Appellant,

v.

ROOF COATINGS, INC., et al., Defendants-Third-Party Plaintiffs-Appellants Cross Appellees,

Trapmar, Inc., Third-Party
Defendant-Appellee.

No. 74–2355.

United States Court of Appeals,
Fifth Circuit.

Aug. 6, 1976.

William L. Von Hoene, New Orleans, La., for Roof, and others.

Donald A. Meyer, New Orleans, La., for Meltzer.

A. Morgan Brian, Jr., New Orleans, La., for Trapmar, Inc.

Before AINSWORTH, MORGAN and RONEY, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This appeal results from a judgment of $51,895.66 for plaintiff, Lane N. Meltzer, against defendants, Roof Coatings, Inc. and Neogard Corp., for breach of contract. Meltzer entered into a contract with Trapmar, Inc. under which Trapmar would construct a building in New Orleans, Louisiana. On June 16, 1966, Trapmar subcontracted with Roof Coatings to apply a roofing material known as Neogard Neopene Auto Guard. This roofing, which would be sprayed on the concrete slab roof, was designed to make the roof watertight. Upon completion of the building and roof, Meltzer paid Roof Coatings the contract price and then leased the building to Barker's Department Stores, Inc. As soon as the first rain after the building was occupied, the roof began to leak in several places. Meltzer brought this diversity action against Roof Coatings and Neogard, the manufacturer of the roofing material, and obtained the substantial award from which the defendants appeal.[1] Defendants brought a third-party action against Trapmar which was dismissed. We find none of the errors asserted to have merit and affirm.

Trial of this action was begun in the United States District Court for the Eastern District of Louisiana on August 9, 1971. At trial, Meltzer claimed that Roof Coatings had not applied the roofing in a workmanlike manner. As a result, Meltzer sought damages from the defendants in order to repair the roof and damages to Barker's Store due to leaks. Roof Coatings argued that Trapmar had improperly constructed the concrete roof and that all leaks were a result of Trapmar's faulty construction. In addition, Roof Coatings contended that a guarantee that it had issued to Barker's Store on December 29, 1966, limited damages to an amount required to repair the roof and excluded any other damages that Barker might sustain.

At completion of the trial, the district court entered judgment for Meltzer. The

---

1. Meltzer cross appealed contending that the district court improperly computed the amount of incidental damages.

parties, however, appeared to settle the matter and requested that the judgment be set aside. While the terms of the settlement are not clearly set out in the record, apparently Roof Coatings and Neogard would provide a new coating that would result in a watertight roof. The trial judge vacated his original judgment and on March 27, 1972, entered an order dismissing the action with leave to reopen if settlement was not consummated within sixty days. Meltzer's attorney filed a timely motion to reopen.[2] A hearing was eventually held on August 1, 1973, that resulted in a new entry of judgment for $51,396.66,[3] as well as findings of fact and conclusions of law by the district court. This judgment also provided that if defendants performed the work required to place the roof in a watertight condition then they would receive a credit of $42,500 against the judgment. After several stays of that judgment, defendants filed a Rule 60(b) motion in which they alleged that the roof had been made watertight, and they sought the $42,500 credit against the judgment. The court, finding the roof to still be leaking, rejected defendants' contention and amended the judgment to remove the proviso. The result was a judgment against Roof Coatings and Neogard to pay Meltzer $51,896.66 from which defendants appeal.

 On appeal, defendants present several contentions in attacking the result below. As we understand them, defendants argue first that the district court's finding that the leaks were due to the faulty application of the coating and not to structural deficiencies in the building is clearly erroneous. We see no reason to reject the district court's finding on this contested issue of fact. Implicitly, the district court found that Roof Coatings had contracted to provide a roof that was reasonably watertight. *See U-Test-M of Louisiana, Inc. v. Martin,* 305 So.2d 557 (La.App. 2nd Cir. 1974). Secondly, the court found that, as in all Louisiana construction contracts, defendants had an obligation to perform their contractual undertakings in a workmanlike manner. *North American Contracting Corp. v. Gibson,* 327 So.2d 444 (La.App. 3rd Cir. 1975). There is more than adequate evidence that the application of the Neogard coating was deficient and that the faulty application resulted in the leaks. Moreover, even though there was some testimony that the building's construction was inadequate, there is sufficient evidence to support the district court's conclusion that such inadequacy did not contribute to the leaks.

 Secondly, Roof Coatings argues that the district court erred in rejecting its Rule 60(b) motion for credit on the judgment. While the amount of work done by Roof Coatings in an attempt to satisfy the judgment is not clear from the record, the district court did find that the roof was still not watertight. The original judgment clearly states that for Roof Coatings to receive credit the roof must be placed "in a watertight condition." Rule 60(b) motions are directed to the sound discretion of the district court. *Hand v. United States,* 441 F.2d 529 (5th Cir. 1971); *Stilwell v. Travelers Insurance Co.,* 327 F.2d 931 (5th Cir. 1964). There was ample evidence to support the district court's finding that this "second roof" was not watertight, and there is no reason to disturb the district court's exercise of its discretion in rejecting the motion.[4]

---

**2.** This motion was not originally included in the record on appeal. This court remanded for a hearing on the timeliness of Meltzer's motion to reopen and the district court concluded that the motion was timely filed.

**3.** The damages consisted of $42,500—stipulation of damages concerning repairing roof; $7,578.40—damages of Meltzer's tenant, Barker's Department Store; $1,817.26—amount Meltzer expended attempting to repair roof.

**4.** The defendants also sought additional credits to the judgment for amounts they claim they have paid Barker's Store. After a careful review of the record of the hearing on the Rule 60(b) motion, we find that defendants abandoned this contention before the district court. Since no lower court has ever addressed this contention, it is not properly before us.

The third contention advanced by defendants is that the warranty provided by Neogard and Roof Coatings to Barker's Store approximately six months after the contract was consummated limits the damages that Meltzer may collect. Defendants are not exactly clear as to what effect the warranty has in limiting damages. We understand the thrust of their argument to be that certain wording in the warranty excludes all incidental damages caused by the leaks. In short, defendants object to $7,578.40 of the judgment which represents damages to Barker's Department Store.

The district court held that the warranty was ineffective to limit Meltzer's damages. Under Louisiana law, warranty provisions are strictly construed. *Harris v. Automatic Enterprises of Louisiana, Inc.,* 145 So.2d 335 (La.App. 4th Cir. 1962). In the sale context, Louisiana courts have held that the delivery of a warranty subsequent to the entering into a contract has no effect. *Hebert v. Claude Y. Woolfolk Corp.,* 176 So.2d 814, 819 (La.App. 3d Cir. 1965); *Stevens v. Daigle & Hinson Rambler, Inc.,* 153 So.2d 511, 514 (La.App. 1st Cir. 1963). While this contract is a construction contract, *Henson v. Gonzalez,* 326 So.2d 396 (La.App. 1st Cir. 1976), we believe that the warranty issued to Barker's Store six months after the parties agreed to the contract cannot limit Meltzer's recovery. Meltzer could recover for damages done to property in the store for which he was responsible. *U-Test-M of Louisiana v. Martin, supra.* In addition, the fact that no judgment had been entered against Meltzer for these damages, although a suit is pending, does not make the damages so speculative that the court could not award them.

Finally, at several points defendants appear to attack the verdict as excessive. They argue essentially that they have placed two roofs on Meltzer's building and should not be required to pay for a third. The difficulty with this argument is that the district court found that defendants contracted to provide a roofing material in a workmanlike manner and failed to do so. As we stated before, that holding is not clearly erroneous. In general, the measure of damages for breach of contract is the sum that will place plaintiff in the same position as if the obligation had been fulfilled. LSA–C.C. Article 1930; *North American Contracting Corp. v. Gibson, supra,* at 450; *Garcia v. Hollywood Pool Corp.,* 328 So.2d 899 (La.App. 4th Cir. 1976). At trial the parties stipulated that the cost of a new application would be $42,500. Defendants do not clearly state that they object to this measure of damage. Even if they did object, however, we could not say that the district court interpretation of this oral stipulation as an agreement on the amount required to fulfill Meltzer's contract expectation was incorrect.

Defendants agreed to apply Neogard coating in a workmanlike manner. They failed to do so. They are liable for all damages proximately resulting from that failure. Meltzer's cross-appeal is DENIED. The judgment is AFFIRMED.