Dear Mayor Roach:
This office is in receipt of your request for an opinion of the Attorney General in regard to municipal employee's pay in connection with their bargaining agreements.
You indicate in past union contracts with the various collective bargaining representatives the City of Lake Charles agreed that the employees covered by the union contracts would receive pay raises equal in amount to any additional pay raises afforded to other City departments during the terms of the union Contracts. With reference to jurisprudence and an earlier Attorney General Opinion, you indicate it has not been decided whether or not contractual language constitutes an improper abdication or delegation of legislative authority.
You further stated that the City of Lake Charles presently spends $575,000.00 annually in overtime pay for employees of the Lake Charles Fire Department, and there is a disagreement between the Union and the Fire Department Administration in regard to the overtime policy as set forth in the union contract between the City and the Firefighters. The Mayor and the Fire Department Administration are proposing working together to revise and clarify the current overtime policy, and to provide a pay supplement that would benefit all personnel, including those who do not presently benefit from the current overtime policy. You state, "As long as the current policy is in effect, the cost of overtime will continue to increase, and employees will not share equally either in terms of work or benefits." Accordingly, you relate as follows:
 The City has proposed a one-year trial period to allow for clarification and tracking of overtime. The overtime budget will be reviewed monthly by the Fire Department Administration and the Mayor's Office. The Union will meet with the Administration on quarterly basis to review overtime issues. Upon completion of the one-year trial period, a review will be done. If the implementation of this change in overtime policy results in the anticipated cost savings, and there are no other policy or budgetary issues with the proposal, the City supplemental pay plan will be made a permanent part of the Civil Service pay system.
Based upon these observations, you ask the following questions:
 1) May a municipality by contract limit its legislative authority to control employee pay and other fiscal issues; and
 2) Is the proposed overtime adjustment as explained a pay raise in violation of the contract provisions in the existing contract between the City of Lake Charles and the Louisiana Public Employees Council 17, American Federation of State, County and Municipal Employees, AFL-CIO, Affiliated Local Union Number 1524?
With respect to your first issue, we find Atty. Gen. Op. 79-1141 pertinent. Therein this office found Art. X, Sec. 10(3), La. Const. 1974, was a reaffirmation of the law as it existed prior to the 1974 Constitution, and quoted the provision in part as follows:
 * * * * No rule, regulation, or practice of the commission, of any agency or department, or of any official of the state or any political subdivision shall favor or discriminate against any applicant or employee because of his membership or non-membership in any private organization; but this shall not prohibit any state agency, department, or political subdivision from contracting with any employee organization with respect to wages, hours, grievances, working conditions, or other conditions of employment in a manner not inconsistent with this constitution, a civil service law, or a valid rule or regulation of a commission.
It was then concluded, "The above constitutional provision authorizes public bodies to recognize labor organizations, e.g., public employee unions, to engage in collective bargaining and to enter into binding contracts as long as this is done in a manner not inconsistent with the constitution, a civil service law, or a rule of the state or a city civil service commission."
We find the conclusion in this opinion supported by subsequent opinions of the Court wherein it ruled in favor of city employees under union agreements against the City for pay increases as provided in the Collective Bargaining Agreement. Ducote v. City of Alexandria,706 So.2d 673, (La.App, 3 Cir, 1998); Ducote v. City of Alexandria,670 So.2d 1378 (La. App 3 Cir. 1996).
In connection with your second question you set forth the contract provision with the unions as follows:
 It is also agreed and understood that the employees covered by this Agreement shall receive an amount equal to any additional pay raise afforded other City departments during the term of this Agreement. Adjustments to Civil Service pay plans shall not constitute a pay raise under this agreement. Adjustments to the aforementioned pay plans shall be made after a prior study by the City of comparable pay rates among cities with similarities to Lake Charles.
As noted hereinabove the City of Lake Charles is spending approximately $575,000.00 in overtime pay for employees of the Lake Charles Fire Department which is assigned by rank and seniority. Therefore, some firemen do not work any overtime. Expecting that the cost of overtime will continue to increase and employees will not share equally either in terms of work or benefits, the city would provide by the revised policy a monthly supplemental pay to each employee of 6% of the employee's monthly Civil Service salary, and all employees will be eligible to work. However, you state that some will actually end up making less than the 6% supplemental payment, some will make more, and the rest will make the same.
We do not find that the supplemental pay is a pay raise, but a revision in a Department's policy. The policy change will be used to stop the overtime increase and establish a city supplemental pay plan to equalize benefits for all personnel in the Department. Some will make more, others will be the same or less. Under the contract agreement that municipal employees shall receive an amount equal to any pay raise afforded "other city departments", the facts indicate this is a pay adjustment, and not a pay increase to an entire Department inasmuch as only some will make more.
While we find it is difficult to understand how overtime pay for the Fire Department can be entirely eliminated, we hope we have sufficiently answered your inquiry.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 BY:__________________________ BARBARA B. RUTLEDGE Assistant Attorney General
RPI/bbr
Date Received: Oct. 26, 2000 Date Released: February 2, 2001
BARBARA B. RUTLEDGE Assistant Attorney General